UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MÖLNLYCKE HEALTH CARE US, LLC,

                          Plaintiff,

      -against-

GREENWOOD MARKETING, LLC d/b/a
RESTORATIVE MEDICAL or SPRY
THERAPEUTICS,

                          Defendant.
-------------------------------------------------------------X

**ORDER**

22 Civ. 3719 (CS) (JCM)

Plaintiff Mölnlycke Health Care US, LLC ("MHC" or "Plaintiff") brought this action against Defendant Greenwood Marketing, LLC d/b/a Restorative Medical or Spry Therapeutics ("Defendant"), alleging infringement of two patents. (Docket No. 1). Presently before the Court is Defendant's motion to compel Plaintiff's production of documents withheld or redacted on privilege grounds ("Motion"). (Docket Nos. 193, 195).[1] Plaintiff filed an opposition, (Docket No. 199) ("Opposition"), and Defendant replied, (Docket No. 202) ("Reply"). For the reasons set forth below, Defendant's Motion is granted in part and denied in part.

## I. BACKGROUND

### A. Relevant Facts

The Court includes only the facts necessary to resolve Defendant's Motion. Plaintiff, a United States subsidiary of a Swedish company, filed this lawsuit in May 2022 alleging patent infringement of its fluidized positioner products. (Docket No. 1 ¶¶ 1, 36-50). In 2016, Plaintiff acquired the patents at issue from Bill and Bob Purdy, who now own Defendant. (*Id.* ¶¶ 3-4). In 2021, Plaintiff learned that Defendant was selling products that appeared to infringe on the

---

[1] Defendant's filing was deficient and refiled on July 16, 2024. (Docket No. 195). The Court will cite to Docket No. 195 when citing to the Motion.

patents at issue. (*See generally id.*).  Defendant denies these allegations and maintains that Plaintiff tried to gain a competitive advantage by having its representatives inform customers that Defendant manufactures and sells substandard products that infringe on Plaintiff's intellectual property and by using the present litigation to deter customers. (Docket No. 92 at 15).

This lawsuit follows two prior lawsuits between the parties.  In 2020, Plaintiff sued the Purdys and Restorative Medical for willful patent infringement, but that case settled. (Docket No. 1 ¶ 5).  Plaintiff also sued the Purdys for defamation and enforcement of the 2020 settlement agreement. (*Id.* ¶ 7).  That case also settled in 2022. (*Id.*).

**B. Procedural History**

The parties have engaged in zealous advocacy and have raised numerous discovery disputes with the Court. (Docket Nos. 74, 79, 96, 97, 101, 103, 106, 109, 110, 111, 112, 118, 119, 123, 124, 131, 137, 138, 143, 144, 145, 152, 154, 160, 161, 162, 166, 169, 172, 173, 175, 178, 182, 186, 188).  The current dispute was initially raised in a joint letter on June 3, 2024. (Docket No. 182).  However, the issues were not ripe for review, and the Court ordered the parties to meet-and-confer to try to resolve the dispute without court intervention. (Docket No. 183).  On June 17, 2024, the parties filed another joint letter, explaining that they had narrowed the issues but still could not resolve the privilege issue. (Docket No. 186).  The parties requested the Court conduct an *in camera* review of the documents at issue. (*Id.* at 2, 5).  On June 21, 2024, the Court set a briefing schedule and ordered Plaintiff to produce the documents for *in camera* review. (Docket No. 190).  Thereafter, on July 12, 2024, Defendant filed the instant Motion seeking production of forty-two documents and two videos. (Docket Nos. 195).  Plaintiff opposed the Motion on July 26, 2024, (Docket No. 199), and submitted the documents for *in camera* review.  Defendant filed its Reply on August 2, 2024. (Docket No. 202).  The Court

heard oral argument on September 23, 2024, and directed Plaintiff to confirm whether some of the fully withheld documents should only be redacted or were properly fully withheld. Plaintiff did so on September 25, 2024 by e-mail and filed a letter on September 30, 2024. (Docket No. 210). The Court has conducted an *in camera* review of all the documents submitted.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides, in relevant part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The burden of demonstrating relevance is on the party seeking discovery . . . [and] [o]nce relevance has been shown, it is up to the responding party to justify curtailing discovery." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012) (quoting *Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 431 (S.D.N.Y. 2011)). The court has "broad discretion" in determining relevance. *Michael Kors, L.L.C. v. Su Yan Ye*, 1:18-CV-2684 (KHP), 2019 WL 1517552, at *2 (S.D.N.Y. Apr. 8, 2019).

The claims in this case arise under federal law, so the federal common law on privilege applies. *See In re Allergan plc Securities Litigation*, 18 Civ. 12089 (CM)(GWG), 2021 WL 4121300, at *2 (S.D.N.Y. Sept. 9, 2021); *see also* Fed. R. Evid. 501.

### A. Attorney-Client Privilege

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). "For the privilege to apply, the communication itself must be 'primarily or predominantly of a legal character.'" *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 428 (S.D.N.Y. 2013) (quoting *Rossi*

*v. Blue Cross & Blue Shield of Greater N.Y.*, 73 N.Y.2d 588, 594 (1989)). "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." *In re County of Erie*, 473 F.3d. 413, 419 (2d Cir. 2007). The "question usually is whether the communication was generated for the purpose of obtaining or providing legal advice as opposed to business advice." *Id.* "[T]he burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224 (2d Cir. 1984).

Because of the dual roles of in-house counsel, "communications between a corporation's employees and its in-house counsel subject to the attorney-client privilege must be scrutinized carefully to determine whether the predominant purpose of the communication was to convey business advice and information or, alternatively, to obtain or provide legal advice." *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 18-CV-11386 (VSB)(KHP), 2021 WL 3524081, at *2 (S.D.N.Y. Aug. 10, 2021). Because "information is frequently sent to in-house corporate counsel in order to keep them apprised of ongoing business developments, the implied request for advice must still be the primary reason for the communication in order for the privilege to attach." *In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 324 (S.D.N.Y. 2020).

The attorney-client privilege extends to communications "among non-lawyer employees of a corporation where the purpose of the communication was to provide information to counsel or aid counsel in providing legal advice." *Pearlstein v. Blackberry Ltd.*, 13-CV-07060 (CM)(KHP), 2019 WL 1259382, at *5 (S.D.N.Y. Mar. 19, 2019). This includes "factual investigations conducted or directed by an attorney" because the "first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant." *Id.* at *4 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 390-91

(1981)). Under these circumstances, "the privilege . . . can extend to shield communications to others when the purpose of the communication is to assist the attorney in rendering advice to the client." *Mejia*, 655 F.3d at 132 (internal citation and quotations omitted).

"The party asserting privilege also has the burden to establish that there has been no waiver." *Egiazaryan*, 290 F.R.D. at 428. To avoid waiver, communications among corporate employees that discuss advice by counsel must only be "made to employees that are 'in a position to act or rely on the legal advice contained in the communication.'" *In re Allergan*, 2021 WL 4121300, at *3 (quoting *Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 598 (S.D.N.Y. 2015)). "Whether the privilege is waived depends on whether the recipient had a need to know the content of the privileged communication in order to perform her job effectively or to make informed decisions concerning, or affected by, the subject matter of the privileged communication." *Id.* at *9 (quoting *Norton v. Town of Islip*, No. CV 04-3079(PKC)(SIL), 2015 WL 5542543, at *3 (E.D.N.Y. Sept. 18, 2015)). The Court analyzes the recipient's "need to know" from two perspectives: "(1) the role in the corporation of the employee or agent who receives the communication; and (2) the nature of the communication, that is, whether it necessarily incorporates legal advice." *Norton*, 2015 WL 5542543, at *3 (internal citation omitted).

**B. Work Product Doctrine**

The work product doctrine is based on "strong public policy" and is codified in part by Federal Rule of Civil Procedure 26(b)(3), which provides that a party is not entitled to obtain discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," Fed. R. Civ. P. 26(b)(3), unless the party shows substantial need and an inability to obtain the substantial equivalent of the documents

without undue hardship, *United States v. Adlman* ("*Adlman II*"), 134 F.3d 1194, 1197 (2d Cir. 1998). It "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *Id.* at 1196 (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)). The work product doctrine protects a document "if, 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation.'" *Schaeffler v. U.S.*, 806 F.3d 34, 43 (2d Cir. 2015) (quoting *Adlman II*, 134 F.3d at 1202) (emphasis in original).

Specifically, "a document created because of anticipated litigation, which tends to reveal mental impressions, conclusions, opinions or theories concerning the litigation, does not lose work-product protection merely because it is intended to assist in the making of a business decision influenced by the likely outcome of the anticipated litigation." *Adlman II*, 134 F.3d at 1195. "Conversely, protection will be withheld from 'documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation.'" *Schaeffler*, 806 F.3d at 43 (quoting *Adlman II*, 134 F.3d at 1202). The "work product doctrine protects materials prepared not only by attorneys but also by their agents." *Egiazaryan*, 290 F.R.D. at 435. The documents in question "must result from the conduct of investigative or analytical tasks to aid counsel in preparing for litigation." *Id.* (internal citation and quotations omitted).

III. DISCUSSION

Defendant seeks the production of forty-two documents and two videos listed in Exhibit A, which Plaintiff withheld on privilege grounds. (Docket No. 194-1). Thirty-six of these documents were redacted or withheld under both the attorney-client privilege and work product

doctrine. (*Id.*).  The remaining eight documents were withheld based on the work product doctrine only. (*Id.*).

Defendant maintains that the redactions appear to cover "business and marketing strategies and concerns about competition from Spry – rather than legal advice" and do not appear "directed to (or from) any attorney." (Docket No. 195-5 at 2).  Moreover, Defendant challenges the assertion of the work product protection over communications exchanged "six months to more than a year before litigation," maintaining that the documents could not have been created in anticipation of litigation. (*Id.* at 12).  Plaintiff argues that the documents at issue reflect communications with MHC's legal department and other MHC teams that "assisted [internal counsel Shawna] Traynor in the pre-suit investigation." (Docket No. 199 at 5).  Plaintiff further explains that due to the prior disputes between the parties and early notice of potential infringement, "it is no surprise that the privileged and work product communications are numerous and span many months." (*Id.*).

**A. The Parties' Document Categories**[2]

**1. Log Nos. 241, 334, 335, 336, 380, 393, 438, 439, 440 and 441: Redacted E-mails with Subject Line "Z-Flo Spry Intel of Loss"**

The Court finds these documents to be privileged, except for a single sentence that appears in several log entries whose privilege has been waived.  The attorney-client privilege protects communications between a client and attorney, that were kept confidential, for the purpose of obtaining or providing legal advice. *See Mejia*, 655 F.3d at 132.  The communication must be "predominantly of a legal character." *Egiazaryan*, 290 F.R.D. at 428 (internal citation and quotations omitted).  The redacted portions of these documents involve direct requests to

---

[2] The Court's analysis will largely follow the categories described by the parties in their submissions. (Docket Nos. 195-1, 199).

Plaintiff's general counsel for legal advice. Therefore, they are "predominantly of a legal character," *id.* (internal citation and quotations omitted), and not subject to further production.

Moreover, the privilege has not been waived. The "attorney-client privilege is not lost where there is 'distribution within a corporation of legal advice received from its counsel,' provided that disclosure is made to employees that are 'in a position to act or rely on the legal advice.'" *In re Allergan*, 2021 WL 4121300, at *3 (quoting *Scott*, 94 F. Supp. 3d at 598). Here, Plaintiff only shared these communications with a limited group of its employees, specifically senior sales directors, senior managers, and senior wound care specialists that needed the information. Thus, Plaintiff did not waive the privilege by sharing legal advice with its own employees to the extent necessary to implement the legal advice. *See Scott*, 94 F. Supp. 3d at 599 ("as a large corporation, Chipotle could not realistically have acted on that advice without communicating it to its own employees."). Therefore, these documents are properly redacted, with one exception.

One sentence in Log Nos. 334, 336, 380, 393 and 438 should be produced because its privilege has been waived. This sentence was disclosed to the Defendant in other e-mails that were previously produced, which Plaintiff acknowledged. (Docket No. 199 at 9, n.3). Thus, Plaintiff should re-produce these documents, removing the redactions on the sentence "We are working on a rebuttal as well as more formal legal action," since it was previously produced in Log No. 335.

Accordingly, Log Nos. 241, 334, 335, 336, 380, 393, 438, 439, 440 and 441 are privileged, appropriately redacted, and not subject to further production, except for the one sentence, described above, in Log Nos. 334, 336, 380, 393 and 438.

2. **Log Nos. 351, 352, 353, 354, 355, 356, 357, 362 and 381: Redacted E-mails with Subject Line "US team update – T&P Backorders Project Grand Prix"**

The Court finds portions of these e-mails are not subject to the attorney-client privilege or work product doctrine and should be produced. The first paragraph under "New actions" in the March 1, 2021 e-mail from Eric De Kesel does not fall under the attorney-client privilege or the work product doctrine. However, the redacted portions of the e-mails from Eric De Kesel on March 8, 2021, March 15, 2021, and March 29, 2021 constitute work product.

The attorney-client privilege extends to "communications among corporate employees that reflect advice rendered by counsel to the corporation." *In re Allergan*, 2021 WL 4121300, at *3. The work product doctrine protects documents that "reveal mental impressions, conclusions, opinions or theories concerning the litigation," even if "intended to assist in the making of a business decision influenced" by the litigation. *Adlman II*, 134 F.3d at 1195. The redacted portion of the March 1, 2021 e-mail does not reflect or share legal advice, nor does it reflect counsel's mental impressions. However, the March 8, 2021, March 15, 2021, and March 29, 2021 e-mails do include privileged information that Eric De Kesel shared with the team and should remain redacted. These e-mails include the mental impressions of counsel, including the result of the factual investigation into potential infringement.

The Court finds *Gucci America, Inc. v. Guess?, Inc.*, cited by both parties, particularly instructive. *See* 271 F.R.D. 58 (S.D.N.Y. 2010). In *Gucci*, plaintiff's in-house counsel instructed non-lawyer Vanni Volpi to investigate defendant's alleged infringement of plaintiff's trademarks. *Id.* at 63. After an *in camera* review of documents, the *Gucci* court found the privilege applied to communications after Volpi presented the results of his initial investigation, because he "acted at the direction of [the in-house attorney] to assist in-house and outside counsel to prepare for litigation against Guess" and was "deputized" to collect information to

assist in the litigation. *Id.* at 71.  As explained in *Gucci,* this District has noted that this exception has been "construed broadly to include individuals who assist attorneys in providing legal services, such as secretaries and law clerks . . . investigators, interviewers, technical experts, accountants, physicians, [and] patent agents." *Id.* (internal citations and quotations omitted).  The communications here are similar to those in *Gucci* since they share the results of the investigation, as interpreted by counsel. *Id*.

Moreover, Plaintiff has not waived this privilege.  Waiver occurs when a party provides work product materials to an adversary or in a way that "materially increases the likelihood that an adversary will obtain the information." *Bank of America, N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 170 (S.D.N.Y. 2002) (internal quotations omitted); *see also Williams v. Bridgeport Music Inc.,* 300 F.R.D. 120, 123 (S.D.N.Y. 2014).  Plaintiff limited the disclosure to its employees and did not increase the "likelihood that an adversary will obtain the information." *Bank of America*, 212 F.R.D. at 170 (internal quotations omitted).

Accordingly, Plaintiff must produce Log Nos. 351, 352, 353, 354, 355, 356, 357, 362 and 381, with the first paragraph under "New actions" in the March 1, 2021 e-mail unredacted.  The other redactions may remain.

3. **Log Nos. 358 and 360: Redacted E-mails with the Subject: "Colorado Children's Update FW: z-flo pricing"**

The Court finds that Log Nos. 358 and 360 are properly redacted.  These redactions are clearly covered by the attorney-client privilege and work product doctrine, as they concern the investigation conducted at the direction of counsel. *See Gucci*, 271 F.R.D. at 71.  Moreover, these documents constitute communications among corporate employees that convey legal advice by counsel, to a restricted group in a position to act or rely upon the legal advice.  The recipients "need[ed] to know" the content of the privileged communication to perform their jobs

effectively, and thus, disclosure to these recipients does not constitute a waiver of the privilege. *Norton*, 2015 WL 5542543, at *3.

In addition, the documents are also protected by the work product doctrine since they were created in anticipation of litigation. Documents that "can fairly be said to have been prepared or obtained *because of* the prospect of litigation," and that reflect the "mental impressions, conclusions, opinions, or theories concerning the litigation," constitute work product. *Adlman II*, 134 F.3d at 1195, 1202 (internal citation and quotations omitted) (emphasis in original). Log Nos. 358 and 360 reflect opinions and theories concerning the litigation. There has been no waiver, as their dissemination does not increase the chance of disclosure to an adversary. *See Bridgeport,* 300 F.R.D. at 123.

Accordingly, Log Nos. 358 and 360 are protected from disclosure under the attorney-client privilege and the work product doctrine.

**4. Log Nos. 390, 391 and 392: Redacted E-mails with Subject "Patent on T&P"**

Log Nos. 390, 391 and 392 are also privileged documents warranting redaction. Documents that seek legal advice regarding the "interpretation and application of legal principles to guide future conduct or to assess past conduct" fall under the privilege. *In re County of Erie*, 473 F.3d at 419. Plaintiff explains that these documents are communications between Swedish attorney Pontus Winqvist and managers, sharing legal advice, "as confirmed by [Magnus Persson] copying Pontus Winqvist to ensure accuracy of the information and to establish a direct line of communication for Enrica Grazia Calovini to seek follow-up legal advice." (Docket No. 199 at 13-14). These communications seek (and obtain) Winqvist's legal advice and, therefore, constitute attorney-client privilege. There is no waiver, as the small group of recipients have a "need to know." *See Norton,* 2015 WL 5542543, at *3.

Accordingly, the redactions in Log Nos. 390, 391 and 392 may remain.

**5. Log No 333**

Plaintiff has provided Defendant with an unredacted version of Log No. 333. (Docket No. 199 at 14, n.5).  Thus, this issue is moot.

**6. Log No. 378: Redacted E-mail with Subject "PJA Sales Comments 2022-02 Global Marketing App updated"**

Log No. 378's redactions are proper.  The Court finds the limited redaction contains legal advice and strategy, and its disclosure was restricted to employees in a position to act or rely upon the legal advice. *See In re Allergan*, 2021 WL 4121300, at *3.  The Court agrees that disclosure to Emily Fitzsimons does not waive the privilege because "she requested the information due to her immediate need to act upon the advice within the scope of her work." (Docket No. 199 at 14-15).  As a result, this redaction is appropriate under the attorney-client privilege.

The redaction is also protected as work product because the redacted portion directly reflects legal strategy, and it does not lose its protection because it is intended to assist the business decision.  There is no waiver of the work product doctrine, as Plaintiff has not increased the risk of disclosure to an adversary by sharing the information with one of Plaintiff's employees. *See Bridgeport*, 300 F.R.D. at 123.

Accordingly, Log No. 378 is protected under the attorney-client privilege and work product doctrine, and is, therefore, properly redacted.

**7. Log Nos. 64, 65, 70, 71 and 86: Withheld Documents**

Log Nos. 64, 65, 70, 71 and 86 are work product and are properly withheld.  The work product doctrine protects "investigative or analytical tasks to aid counsel in preparing for litigation." *Egiazaryan*, 290 F.R.D. at 435 (internal quotations and citation omitted); *see also*

*Gucci*, 271 F.R.D. at 75 (finding work product protection over documents created during the period of time when plaintiff "set out to collect evidence supporting its claims against" defendants, even before the complaints were filed).  The Court finds the video and related e-mails "would not have been prepared in substantially similar form but for the prospect of that litigation." *Am. C. L. Union v. United States Dep't of Just.*, 252 F. Supp. 3d 217, 223 (S.D.N.Y. 2017) (quoting *Adlman II*, 134 F.3d at 1195).  While not created by the attorneys directly, these documents were created by the agents of the attorneys as part of the investigation.  There is no waiver, as their limited dissemination to key decisionmakers shows that they intended to keep them confidential. *See Bank of America*, 212 F.R.D. at 170.

Accordingly, Plaintiff does not have to produce these documents.

**8.  Swedish Language Documents: Log Nos. 87, 97 and 108**

Log Nos. 87 and 108 are fully privileged, and Log No. 97 is now properly redacted.  The privilege "protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation," as long as the recipients are in a "position to act or rely on the legal advice." *In re Allergan*, 2021 WL 4121300, at *3 (internal citation and quotations omitted).  Log No. 87 includes a direct request for patent information from Karin Hillsten, the General Counsel of MHC's parent company. (Docket No. 198 at 15).  Plaintiff has limited disclosure of this communication to a small group of employees involved in the investigation who had a "need to know" and, thus, disclosure did not waive the privilege. *See Norton*, 2015 WL 5542543, at *3.  As a result, Log No. 87 is properly withheld.

Similarly, Log Nos. 97 and 108 are respectively properly redacted and withheld as privileged.  The Court has reviewed the new version of Log No. 97, which redacted only the last two e-mails.  It is clear from the context in which these e-mails were sent that they should be

protected under the attorney-client and work product privileges. Log No. 108 includes requests to Ms. Traynor for legal advice, including the "application of legal principles to guide future conduct." *In re County of Erie*, 473 F.3d at 419. Both documents also consist of fact-gathering and analysis to aid counsel in the investigation into potential patent infringement and, therefore, are privileged. *See Pearlstein*, 2019 WL 1259382, at *4.

Accordingly, Log Nos. 87 and 108 are properly withheld, and Log No. 97 is properly redacted.

### 9. Log Nos. 113, 289, 383, 442 and 444: Withheld E-mails

The Court finds Log Nos. 113 and 383, which are part of the same e-mail chain, to be privileged. The work product doctrine protects "document[s] whose purpose is to assist in preparation for litigation." *Adlman II*, 134 F.3d at 1197. These documents reflect "investigative [and] analytical tasks to aid counsel in preparing for litigation," *Egiazaryan*, 290 F.R.D. at 435 (internal quotations and citation omitted), and therefore merit work product protection. As the e-mails restrict recipients to three of Plaintiff's employees and do not increase the risk of potential disclosure, Plaintiff has not waived the privilege. *See Bridgeport,* 300 F.R.D. at 123. Thus, Log Nos. 113 and 383 are protected under the work product doctrine.

Log Nos. 289, 442 and 444 are privileged, attorney-client communications. The privilege protects documents with a "predominant purpose" to "render or solicit legal advice." *In re County of Erie*, 473 F.3d at 420. These documents appear to be direct communications to Plaintiff's general counsel, seeking legal advice. Plaintiff has not waived the privilege, since the communication is restricted to a small group of employees with a "need to know" this information. *See Norton*, 2015 WL 5542543, at *3. Thus, Log Nos. 289, 442 and 444 constitute privileged attorney-client communications.

Accordingly, the Court finds Log Nos. 113, 289, 383, 442 and 444 properly withheld.

## 10. Excluded Documents: Log Nos. 337, 339, 376, 382 and 461[3]

Log Nos. 337, 339, 376, 382 and the redacted portion of Log No. 461 are properly withheld. These documents, except for Log No. 461, reflect the results of "investigative or analytical tasks to aid counsel in preparing for litigation," and, therefore, constitute work product. *Egiazaryan*, 290 F.R.D. at 435 (internal quotations and citation omitted). Log Nos. 337 and 339 provide an update on the investigation conducted in aid of litigation. *See Pearlstein*, 2019 WL 1259382, at *4; *see also Gucci*, 271 F.R.D. at 71. Log No. 376 includes legal advice from Ms. Traynor and is therefore privileged. *See In re Allergan*, 2021 WL 4121300, at *3. Log No. 461, which provides a competitive update, includes only one redaction of a bullet point in an e-mail that addresses the investigation, which falls under the work product protection. *See Pearlstein*, 2019 WL 1259382, at *4-*5. Plaintiff has not waived the privilege over any of these documents, as it restricts the recipients to a small group of three individuals with a need to know this information, *see Norton*, 2015 WL 5542543, at *3, and does not increase the likelihood of disclosure to an adversary, *see Bank of America*, 212 F.R.D. at 170.

Accordingly, Log Nos. 337, 339, 376, 382 and 461 are all privileged and properly withheld or redacted.

## B. Crime-Fraud Exception and Fees

The Court denies Defendant's request for fees for this Motion. The Patent Act permits district courts to award attorney's fees to parties who prevail in "exceptional cases." *Octane*

---

[3] While not specifically addressed in its Motion, Defendant stated at oral argument that it maintains its challenge to these five documents, along with Log No. 444. The Court notes that while Defendant included in the Reply the other four documents that Plaintiff observed were missing from the Motion, Log Nos. 339, 376, 382 and 444, (Docket No. 199 at 8, n.2), Defendant did not address Log Nos. 337 or 461 in the Reply, (*see generally*, Docket No. 202).

*Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 548 (2014) (citing 35 U.S.C. § 285). District courts may exercise "equitable discretion" to determine whether the case is "exceptional," by considering whether the case "stands out from others with respect to the substantive strength of a party's litigating position…or the unreasonable manner in which the case was litigated." *Id.* at 554. Meanwhile, the crime-fraud exception exempts communications "intended in some way to facilitate or to conceal the criminal activity." *In re Search Warrant dated Nov. 5, 2021*, 21 Misc. 813 (AT), 2023 WL 8868371, at *9 (S.D.N.Y. Dec. 21, 2023) (quoting *In re Richard Roe, Inc.,* 68 F.3d 38, 40 (2d Cir. 1995)). The party seeking the exception must show "probable cause to believe that (1) a crime or fraud has been attempted or committed; and (2) the privileged communications and work product were in furtherance thereof." *Pearlstein*, 2019 WL 1259382, at *9.

  While Defendant attempts to connect the crime-fraud exception to the exceptional nature required under the Patent Act, (Docket No. 195-5 at 9-11), Defendant has not shown probable cause to believe that a crime or fraud was committed, nor has it asserted the communications at issue further the alleged crime or fraud. *Pearlstein*, 2019 WL 1259382, at *9. Defendant simply alleges that Plaintiff brought the patent infringement lawsuit in bad faith to remove Defendant's competition, and further asserts that the withheld information includes "legal advice regarding an improper scheme to file a lawsuit as a means of quelling competition." (Docket No. 195-5 at 10). However, that is not what the documents reveal. Moreover, Defendant does not establish that the "particular communication with counsel or attorney work product was *intended* in some way to facilitate or to conceal the criminal activity," or that a crime or fraud has been attempted or committed. *In re: General Motors LLC*, 14-MD-2543 (JMF), 2015 WL 7574460, at *7

(S.D.N.Y. Nov. 25, 2015) (internal quotations and citations omitted). Accordingly, the Court denies Defendant's request for fees for the Motion.

## IV. CONCLUSION

For the reasons set forth herein, Plaintiff's motion is granted in part and denied in part. Plaintiff must: (1) produce Log Nos. 334, 336, 380, 393 and 438 without the redaction of the one sentence whose privilege has been waived; and (2) produce the first paragraph under "New actions" in the March 1, 2021 e-mail for Log Nos. 351, 352, 353, 354, 355, 356, 357, 362 and 381.

The Clerk of the Court is respectfully requested to terminate the pending motion (Docket No. 195).

Dated:   October 29, 2024
         White Plains, New York

                                        **SO ORDERED:**

                                        _____
                                        JUDITH C. McCARTHY
                                        United States Magistrate Judge